UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                                                    :
JONATHAN E. SMITH,                                  :
                                                    :
                    Plaintiff,                      :
                                                    :
            - against -                             :
                                                    :
NBC UNIVERSAL, a corporation, d/b/a                 :
NBC UNIVERSAL TELEVISION                            :
GROUP a/k/a NBC UNIVERSAL                           :
TELEVISION and d/b/a SCI FI                         :
CHANNEL, MG PERIN, INC., a                          :
Corporation, UNIVERSAL                              :
TELEVISION NETWORKS, and DOES                       :
I-XX, inclusive,                                    :
                                                    :
                    Defendants.                     :
-------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/29/07

## OPINION AND ORDER

**06 Civ. 5350 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Jonathan E. Smith holds the copyright to a video of orcas attacking

him during a performance at Sea World (the "Video"). Smith has filed suit against

NBC Universal, MG Perin Inc., Universal Television Networks ("UTN"), and

twenty unknown persons for unlicensed reproduction of the Video and for various

violations of state law. This action was originally filed in the Southern District of

California, and was moved to this Court pursuant to section 1404 of title 28 of the

1

United States Code. MG Perin and UTN have stipulated that they violated Smith's copyright to the Video. Defendants now move for partial summary judgment, asking this Court to dismiss all claims against NBC Universal and to dismiss all state law claims against all defendants. For the reasons stated below, the motion is granted. Smith's claims under the Copyright Act are not affected by this decision.

## II. BACKGROUND

### A. Facts[1]

In the mid-1980s, Smith worked as an animal trainer at Sea World in San Diego, California,[2] where he participated in performances with orcas[3] before

---

[1]     Unless otherwise noted, the following facts are undisputed.

[2]     *See* Defendants' Statement of Material Facts ("Def. 56.1") ¶ 4.

[3]     Plaintiff and defendants refer to the animals as "killer whales." However, although they are part of the suborder *Odontoceti* (commonly referred to as "toothed whales"), *Orcinus orca* are members of the family *Delphinidae*, and so are technically dolphins. *See Orcinus orca*, Integrated Taxonomic Information System, National Museum of National History, available at http://www.itis.gov/servlet/SingleRpt/SingleRpt?search_topic=TSN&search_valu e=180469 (last visited Oct. 16, 2007). *See also Natural Res. Def. Council v. Kempthorne*, — F. Supp. 2d —, No. 1:05-CV-01207, 2007 WL 1577896, at *32 (E.D. Cal. May 25, 2007) (noting the "considerable morphological, behavioral, and genetic evidence that the global Orcinus orca taxon is inaccurate" and that there may be multiple species of orca). *See generally Center for Biological Diversity v. Lohn*, 296 F. Supp. 2d 1223, 1227 (W.D. Wash. 2003) (discussing orca taxonomy and behavior), *vacated*, 483 F.3d 984 (9th Cir. 2007).

live audiences.[4] During a performance on March 4, 1987, two orcas attacked Smith (the "Attack").[5] The incident was reported in the news.[6]

An audience member, Mr. Chiang-Shek, recorded the performance (and thus the Attack) using a camcorder. The Video is approximately five minutes long.[7] On March 12, 1987, Chiang-Shek visited Smith in the hospital, gave him a copy of the Video and also assigned the copyright to him.[8] Smith registered the Video with the U.S. Copyright Office (registration number PAU 1-130-720).[9]

Smith subsequently licensed the Video to Channel 39, a local ABC affiliate in San Diego, which broadcast the attack on-air.[10] Smith received three hundred dollars for this license.[11] Smith also granted Channel 39 an interview to discuss the attack. In 1988, Smith licensed the Video to the Fox Broadcasting

---

[4]     *See* Def. 56.1 ¶¶ 6, 7.

[5]     *See id.* ¶ 8. *See also* 3/15/07 Deposition of Jonathan E. Smith ("Pl. Dep."), Ex. B to 7/13/07 Notice of Motion, at 22, 25.

[6]     *See* Def. 56.1 ¶ 12.

[7]     *See id.* ¶ 10.

[8]     *See id.*

[9]     *See id.* ¶ 11.

[10]    *See id.* ¶¶ 13, 14.

[11]    *See id.*

3

Company program *A Current Affair* and granted an interview in connection with the program (the "Fox Interview"), for which Smith was paid five hundred dollars.[12] Smith does not hold the copyright to the Fox Interview.[13]

In the mid-1980s, Showboat Productions PTY Ltd. ("Showboat") produced a television series entitled *The Extraordinary*. Showboat and MG Perin agreed that MG Perin would be the exclusive distributor of *The Extraordinary* in the United States. As part of an episode that addressed orca attacks (the "Episode"), Showboat included several portions of the Fox Interview and thirty-seven seconds of the Video. The Episode identifies Smith by name, and he is clearly visible throughout the excerpts from the Fox Interview.

In 1994, MG Perin syndicated *The Extraordinary*, and it was broadcast on Fox. In 1996, Smith filed suit in the United States District Court for the Southern District of California alleging copyright infringement and supplemental state law claims. On September 16, 1996, the action settled pursuant to an agreement wherein Fox and MG Perin "agree[d] never to duplicate, display, distribute or perform" the Video and refrain from showing any portion of the

---

12    *See id.* ¶¶ 18, 19, 22.

13    *See id.* ¶ 21.

Video again without a license from Smith.[14]  Since that date, Plaintiff has filed other suits related to unlicensed airings of the Video.[15]

On August 19, 2003, in violation of the Settlement Agreement, MG Perin granted UTN a license to broadcast ten episodes of *The Extraordinary*,[16] including the Episode.[17]  MG Perin did not have Smith's authorization to grant a license to air the Video,[18] and thus violated Smith's copyright.[19]  MG Perin received $200,000 in consideration for this license.  UTN aired the episode on June 14, 2004, and in doing so, violated Smith's copyright.[20]

Smith filed the instant action in the Southern District of California on February 13, 2006.[21]  On July 7, 2006, that court granted Defendants' motion to

---

[14]    9/16/96 Mutual Compromise and Settlement Agreement ("Settlement Agreement") ¶ 5, Ex. B to 7/13/07 Affidavit of Richard M. Perin ("Perin Aff."). Defendants have stipulated to several material facts, including violation of the Settlement Agreement. *See* 7/19/07 Stipulation ("Stip.") ¶ 2(g).

[15]    *See* Declaration of Jonathan E. Smith in Opposition to Defendants' Motion for Partial Summary Judgment ¶ 14.

[16]    *See* Def. 56.1 ¶¶ 26, 27.

[17]    *See* Stip. ¶ 2(a), (b).

[18]    *See id.* ¶ 2(c).

[19]    *See id.* ¶ 2(d).

[20]    *See id.* ¶ 2(e), (f).

[21]    The case was assigned docket number 06-cv-0312 (DMS).

transfer venue to this Court. On April 3, 2007, Smith amended the Complaint to add UTN as a defendant.[22]

**B.    Claims**[23]

Smith alleges that the Episode was broadcast on the Sci Fi channel, which he claims is operated by NBC.[24]  Smith has also named as defendants twenty unknown persons who are "responsible in some manner" for the alleged violations.[25]  Smith has alleged reproduction, distribution, and display of copyrighted works and preparation of derivative works in violation of sections 106(1), 106(3), 106(5) and 106(2) of title 17 of the United States Code.[26]  MG Perin and UTN have conceded that they violated Smith's copyright to the Video.[27] Smith has also alleged violations of his common law and statutory rights of

---

[22]     *See* Amended Complaint ("Complaint").

[23]     Smith has agreed to withdraw with prejudice three additional claims, for intentional and negligent infliction of emotional distress against MG Perin and for unfair competition against all defendants. *See* Stip. ¶ 1.

[24]     *See* Complaint ¶ 5.

[25]     *Id.* ¶ 7.

[26]     *See id.* ¶¶ 1-28.

[27]     *See* Stip. ¶ 2(d), (f).

6

publicity,[28] as well as violations of his common law privacy rights.[29] These claims are brought against all defendants. Smith has also accused MG Perin of breach of contract based on the alleged breach of the Settlement Agreement,[30] and MG Perin has stipulated to the breach.[31]

## III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[32] An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[33] A fact is material when it "'might affect the outcome of the

---

[28]    *See* Complaint ¶¶ 32-42 (citing Cal. Civ. Code § 3344).

[29]    *See id.* ¶¶ 43-49.

[30]    *See id.* ¶¶ 50-54.

[31]    *See* Stip. ¶ 2(h).

[32]    Fed. R. Civ. P. 56(c).

[33]    *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)).

suit under the governing law.'"[34] "It is the movant's burden to show that no genuine factual dispute exists."[35]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than show that there is "'some metaphysical doubt as to the material facts,'"[36] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[37] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[38]

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving

---

[34] *Bouboulis v. Transport Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

[35] *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[36] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[37] *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[38] *McClellan*, 439 F.3d at 144 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

party and draw all justifiable inferences in that party's favor.[39] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[40] Summary judgment is therefore inappropriate "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."[41]

## IV.   APPLICABLE LAW

Smith's state law claims are governed by California law. Because this claim was originally filed in California and was transferred in accordance with section 1404(a), when interpreting state law, this Court will apply the law that would have been applied by the United States District Court for the Southern District of California.[42] However, with respect to federal law, this Court is bound

---

[39]   *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

[40]   *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

[41]   *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Pinto v. Allstate Inc. Co.*, 221 F.3d 394, 398 (2d Cir. 2000)).

[42]   *See Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) ("[T]he transferor law should apply regardless of who makes the § 1404(a) motion."); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms.");

9

by the precedent of the Second Circuit.[43]

## A. Common Law Privacy Claims

The California Supreme Court has explained that

> The law of privacy comprises four distinct kinds of invasion of four different interests . . . . Without any attempt to exact definition, these four torts may be described as follows: 1. Intrusion upon the plaintiff's seclusion or solitude or into his private affairs. 2. Public disclosure of embarrassing private facts about the plaintiff. 3. Publicity which places the plaintiff in a false light in the public eye. 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.[44]

Smith has asserted violations of the first, second and fourth of these rights.

### 1. Intrusion into Private Affairs

California common law recognizes a right against "'[i]ntrusion upon

the plaintiff's seclusion or solitude or into his private affairs.'"[45] The tort has two

elements: "(1) intrusion into a private place, conversation or matter, (2) in a

---

*Sheldon v. PHH Corp.*, 135 F.3d 848, 852 (2d Cir. 1998); *Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001).

[43]    *See Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 91 (2d Cir. 2006) ("'[A] transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit.'") (quotation omitted), *cert. granted sub nom. Warner-Lambert Co. v. Kent*, 75 U.S.L.W. 3623 (U.S. Sept. 25, 2007) (No. 06-1498).

[44]    *Lugosi v. Universal Pictures*, 603 P.2d 425, 428 (Cal. 1979) (en banc) (quoting William L. Prosser, *Privacy*, 48 Cal. L. Rev. 383, 389 (1960)).

[45]    *Id.* (quoting *Privacy* at 389).

10

manner highly offensive to a reasonable person."[46] Further, the intrusion must be intentional.[47]

Intrusion requires the plaintiff to demonstrate that "the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source."[48]

## 2.    Disclosure of Private Facts

The cause of action for disclosure of private facts under California common law has four elements: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern."[49]

---

[46]    *Shulman v. Group W Prods.*, 955 P.2d 469, 490 (Cal. 1998). *Accord Panahiasl v. Gurney*, No. 04-04479, 2007 WL 738642, at *2 (N.D. Cal. Mar. 8, 2007) (adding element of intentionality); Restatement (Second) of Torts § 652B (1977) ("One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.").

[47]    *See Taus v. Loftus*, 151 P.3d 1185, 1212 (Cal. 2007).

[48]    *Shulman*, 955 P.2d at 490.

[49]    *Id.* at 478. *Accord* Restatement (Second) of Torts § 652D (1977) ("One who gives publicity to a matter concerning the private life of another is

11

Thus, "[i]f the information reported has previously become part of the 'public domain' or the intrusion into an individual's private life is only slight, publication will be privileged even though the social utility of the publication may be minimal."[50] Similarly, the Supreme Court has explained that "the interests in privacy fade when the information involved already appears on the public record."[51]

### 3. Right of Publicity

California's right to publicity consists of the right "to prevent others from misappropriating the economic value generated by [a] celebrity's fame through the merchandising of the 'name, voice, signature, photograph, or likeness' of the celebrity."[52] "A common law cause of action for appropriation of name or likeness may be pleaded by alleging (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's

---

subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.").

[50]   *Kapellas v. Kofman*, 459 P.2d 912, 922 (Cal. 1969) (en banc) (citation omitted).

[51]   *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975).

[52]   *Winter v. D.C. Comics*, 69 P.3d 473, 478 (2003) (quoting *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 807 (2001)).

12

advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury."[53]

The California Supreme Court has explained that "if the marketability and economic value of the challenged work do not derive primarily from the celebrity's fame, 'there would generally be no actionable right of publicity.'"[54] Indeed, cases that uphold the right to publicity generally involve the defendants' use of the plaintiff's identity to sell a product.[55]

## 4. Newsworthiness Defense

Common to the tort of disclosure of private facts and the right of publicity is the principle that the First Amendment protects the publication of facts

---

[53] *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417 (Cal. Ct. App. 1983) (citing William L. Prosser, *Law of Torts* § 117 (4th ed. 1971); Bernard E. Witkin, *California Procedure* § 606 (2d ed. 1971)).

[54] *Winter*, 69 P.3d at 478 (quoting *Comedy III*, 21 P.3d at 810).

[55] *See, e.g.,Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 638-40 (9th Cir. 1982) (finding right of publicity violation where magazine implied endorsement by celebrity); *Williams v. Weisser*, 273 Cal. App. 2d 726, 741-42 (Ct. App. 1969) (upholding right of privacy action where defendant published notes of plaintiff professor's class notes, finding that "Defendant has used plaintiff's name in selling the publications here in question."); *Fairfield v. American Photography Equip. Co.*, 291 P.2d 194, 198 (Cal. Dist. Ct. App. 1955) (finding violation of right to publicity where defendants' "advertisement necessarily carried the implication that plaintiff endorsed the machine and had permitted defendant to use his name . . . in its advertisements").

13

that are both truthful and newsworthy.[56] Indeed, California courts "have

recognized a broad privilege cloaking the truthful publication of all newsworthy

matters."[57]

According to the California Supreme Court, the guidelines to be

considered in determining whether a fact is newsworthy include "the depth of the

intrusion into the plaintiff's private affairs, the extent to which the plaintiff

voluntarily pushed himself into a position of public notoriety, the exact nature of

the state's interest in preventing the disclosure, and whether the information is a

matter of public record."[58]

"[A] matter in the public interest is not restricted to current events but

---

[56]     *See Shulman*, 955 P.2d at 478 ("[T]he analysis of newsworthiness
inevitably involves accommodating conflicting interests in personal privacy and in
press freedom as guaranteed by the First Amendment to the United States
Constitution"); *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542 (Ct. App.
1993) ("Publication of matters in the public interest, which rests on the right of the
public to know and the freedom of the press to tell it, is not ordinarily
actionable.") (citation omitted); *Maheu v. CBS, Inc.*, 201 Cal. App. 3d 662, 675
(Ct. App. 1988).

[57]     *Kapellas*, 459 P.2d at 922 (citations omitted).

[58]     *Forsher v. Bugliosi*, 608 P.2d 716, 727 (Cal. 1980). *Accord Kapellas*,
459 P.2d at 922 (citing *Gill v. Curtis Publ'g Co.* 239 P.2d 630 (Cal. 1952) (en
banc)); *Maheu*, 201 Cal. App. 3d at 675.

14

may extend to the reproduction of past events."[59] Indeed, the California Supreme

Court has determined that "if a report made reasonably contemporaneously with

the incident would have been in the public interest, the weighing process

continues in light of the circumstances prevailing at the time of publication."[60]

The California Supreme Court has described summary judgment as a "favored

remedy" for the "speedy resolution of cases involving free speech" if the court can

determine whether the facts in question are newsworthy.[61]

## B. Statutory Right of Publicity

Section 3344 of the California Civil Code provides a statutory right

of publicity that supplements, not codifies, the common law right.[62] This statute

provides that "[a]ny person who knowingly uses another's name, voice, signature,

photograph, or likeness, in any manner, on or in products, merchandise, or goods .

---

[59]     *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 794
(Ct. App. 1995) (citations omitted).

[60]     *Forsher*, 608 P.2d at 727.

[61]     *Shulman*, 955 P.2d at 488.

[62]     *See* Cal. Civ. Code § 3344(g) ("The remedies provided for in this
section are cumulative and shall be in addition to any others provided for by
law."). *See also Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988)
("California Civil Code section 3344 does not preclude [plaintiff] from pursuing
any cause of action she may have at common law; the statute itself implies that
such common law causes of action do exist because it says its remedies are merely
'cumulative.'") (quoting § 3344(g)).

.. without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof."[63] The statute also provides for statutory and punitive damages.[64] The statute exempts use of a photograph or likeness "in connection with any news, public affairs, or sports broadcast or account . . . ."[65]

Recovery under this statute "is not limited to celebrity plaintiffs"[66] and there is no requirement that the use create an impression of endorsement.[67] However, the statute requires two elements not required by the common-law right of publicity: "1) knowing use; and 2) a 'direct connection . . . between the use and the commercial purpose.'"[68] To prevail on a claim under section 3344, a plaintiff "must prove all the elements of the common law cause of action" as well as the additional elements.[69]

---

[63]  Cal. Civ. Code § 3344(a).

[64]  *See id.*

[65]  *Id.* § 3344(d).

[66]  *KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 367 (Ct. App. 2000).

[67]  *See Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 414 (9th Cir. 1996).

[68]  *Id.* (quoting *Eastwood*, 149 Cal. App. 3d at 417-18).

[69]  *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1139 (9th Cir. 2006) (quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001)),

16

## C. Breach of Contract

### 1. Damages Requirement

Under California law, the elements of a breach of contract action are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."[70] Because damages are an element of the claim, if a plaintiff cannot demonstrate harm that resulted from a breach of contract, the plaintiff's claim fails as a matter of law. "Actual damage as opposed to mere nominal damage is [an] essential element of a cause of action for breach of contract."[71]

"[D]amages for mental suffering and emotional distress are generally not recoverable in an action for breach of an ordinary commercial contract in California."[72] "Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that

---

*cert. denied,* — U.S. —, 127 S.Ct. 1371 (Feb. 26, 2007).

[70]    *Reichert v. General Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968) (citation omitted).

[71]    *Roberts v. Los Angeles County Bar Assn.*, 105 Cal. App. 4th 604, 617 (Ct. App. 2003) (quoting *Cochran v. Cochran*, 56 Cal. App. 4th 1115, 1123 n.6 (Ct. App. 1997)).

[72]    *Erlich v. Menezes*, 981 P.2d 978, 987 (Cal. 1999) (citing *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 188 (Ct. App. 1994); *Sawyer v. Bank of Am.*, 83 Cal. App. 3d 135, 139 (Ct. App. 1978)).

17

serious emotional disturbance was a particularly likely result."[73]  Cases where

recovery for emotional disturbance is permitted generally involve a contract where

mental anguish was clearly foreseeable[74] or where the express purpose was "the

mental and emotional well-being of one of the contracting parties . . . ."[75]

Otherwise, "the invariable rule [is] pronounced by a legion of cases that damages

are not recoverable for mental suffering . . . resulting from breach of contract."[76]

---

[73]     *Erlich*, 981 P.2d at 987 (citing Restatement (Second) of Contracts §
353 (1981)).

[74]     *See id.  Erlich* cites *Burgess v. Superior Court*, 831 P.2d 1197 (Cal.
1992) (en banc) (infant injured during childbirth); *Molien v. Kaiser Found.
Hosps.*, 616 P.2d 813 (Cal. 1980) (misdiagnosed venereal disease and subsequent
failure of marriage); *Kately v. Wilkinson*, 148 Cal. App. 3d 576 (Ct. App. 1983)
(fatal waterskiing accident); *Chelini v. Nieri*, 196 P.2d 915 (Cal. 1948) (en banc)
(failure to adequately preserve a corpse).

[75]     *Erlich* cites *Wynn v. Monterey Club*, 111 Cal. App. 3d 789, 799-801,
(Ct. App. 1980) (two gambling clubs' agreement to exclude husband's
gambling-addicted wife and not to cash her checks); *Ross v. Forest Lawn Mem'l
Park*, 153 Cal. App. 3d 988, 992-96 (Ct. App. 1984) (cemetery's agreement to
protect grave from vandalism and to keep burial service private); *Windeler v.
Scheers Jewelers*, 8 Cal. App. 3d 844, 851-52 (Ct. App. 1970) (bailment for
heirloom jewelry where bailee knew of jewelry's sentimental value).

[76]     *Frangipani v. Boecker*, 64 Cal. App. 4th 860, 865-66 (Ct. App. 1998)
(alteration in original) (citing *Fletcher v. Western National Life Ins. Co.*, 10 Cal.
App. 3d 376, 400 (Ct. App. 1970); *Westwater v. Grace Church*, 73 P. 1055 (Cal.
1903); *Walpole v. Prefab Mfg. Co.*, 230 P.2d 36 (Cal. Dist. Ct. App. 1951); 1
Witkin, *Summary of California Law* § 651 (8th ed.)).  *Accord Rodriguez v.
International Bus. Mach.*, 960 F. Supp. 227, 232 (N.D. Cal. 1997) ("[T]he
emotional distress and punitive damages claimed by Plaintiff are not recoverable
on a breach of contract claim."); *Maxwell v. Fire Ins. Exch.*, 60 Cal. App. 4th

California limits recovery for emotional disturbance to cases where the extent of the damages was clearly foreseeable because contract damages are based on the voluntary assumption of risk.[77] It would frustrate the goal of contract law to impose damages on a party that did not accept the risk of those damages. Hence, the law provides that "[n]o damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."[78] "'Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at the time; consequential damages beyond the expectations of the parties are not recoverable.'"[79]

"'Lost anticipated profits cannot be recovered if it is uncertain whether any profit would have been derived at all from the proposed undertaking. But lost prospective net profits may be recovered if the evidence shows, with

_____

1446, 1449 (Ct. App. 2d Dist.1998) ("[A]ppellant does not assert any damages other than emotional distress. It is axiomatic that such damages are not recoverable on a theory of breach of contract.").

[77]    *See Erlich*, 981 P.2d at 988.

[78]    Cal. Civil Code § 3301.

[79]    *Erlich*, 981 P.2d at 987 (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454 (Cal. 1994)).

19

reasonable certainty, both their occurrence and extent.'"[80] "Remote, speculative,

or conjectural elements of damage cannot be submitted to or considered by the

jury."[81]

## V.    DISCUSSION

### A.    State Law Claims

#### 1.    Intrusion into Private Affairs

The tort of intrusion into private affairs requires that the plaintiff have

"an objectively reasonable expectation of seclusion or solitude in the place,

conversation or data source."[82] As a matter of law, Smith could not have a

reasonable expectation of privacy in a video that he had previously licensed for

broadcast on national television. Defendants' motion for summary judgment is

therefore granted on this claim.[83]

---

[80]    *BEGL Constr. Co., Inc. v. Los Angeles Unified Sch. Dist.*, 66 Cal.
Rptr. 3d 110, 114 (Ct. App. 2007) (quoting *S.C. Anderson, Inc. v. Bank of Am.*, 24
Cal. App. 4th 529, 536 (Ct. App. 1994)). *Accord Lewis Jorge Const. Mgmt., Inc.
v. Pomona Unified Sch. Dist.*, 102 P.3d 257, 266 (Cal. 2004).

[81]    *People by Dept. of Public Works v. Schultz Co.*, 268 P.2d 117, 124
(Cal. Dist. Ct. App. 1954) (citation omitted).

[82]    *Taus*, 151 P.3d at 1212.

[83]    It is not necessary for this Court to reach the questions of whether the
intrusion was performed "in a manner highly offensive to a reasonable person," or
whether the Video represents "a private place, conversation or matter." *Id.*

20

## 2. Disclosure of Private Facts

The tort of disclosure of private facts requires that the facts in question be private. As noted above, the Video was broadcast on national television with Smith's express permission and so cannot be considered private.[84] Defendants' motion for summary judgment is granted as to this claim.[85]

However, I doubt that a reasonable jury could find either element to be satisfied.

[84] Smith claims that once-public facts can become private again. *See Briscoe v. Reader's Digest Ass'n, Inc.*, 4 Cal. 3d 529, 539 (1971) ("It would be a crass legal fiction to assert that a matter once public never becomes private again."), *overruled by Gates v. Discovery Commc'ns, Inc.*, 34 Cal. 4th 679 (Cal. 2004). In *Briscoe*, the California Supreme Court held that publication of the name of the perpetrator of a crime eleven years after its occurrence could violate the perpetrator's right of privacy. *Briscoe*, 4 Cal. 3d at 541-42. However, after the Supreme Court ruled in *Cox Broadcasting Corp. v. Cohn* that the state could not prevent publication of the name of a sexual assault victim once that name was released by the courts because "interests in privacy fade when the information involved already appears on the public record," 420 U.S. at 494-95, the California Supreme Court recognized that *Briscoe* was no longer valid, at least as applied to its facts. *See Gates*, 34 Cal. 4th at 692. While *Briscoe* may still apply in certain limited circumstances, no special privacy concerns warrant such treatment here. *See also* Restatement (Second) of Torts § 652D cmt. b (1977) ("There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public.").

[85] Further, this tort is not actionable if the information disclosed is both truthful and newsworthy. Determining the incident's newsworthiness requires a balancing of several factors. *See Forsher*, 608 P.2d at 727 (listing factors to be considered). *See also Kapellas*, 459 P.2d at 922; *Maheu*, 201 Cal. App. 3d at 675. Smith concedes that the Video is newsworthy. *See* Pl. Dep. at 93-94 ("[C]onsidering not very many people have been attacked by killer whales, and in other cases, there's not much documented footage of attacks by killer whales, it is

21

### 3. Right of Publicity

Smith has demonstrated and defendants have conceded that at least some of the defendants made use of his likeness without his consent. At issue are whether defendants made use of Smith's identity for commercial advantage, and whether Smith suffered damages.

There is no question that the Episode features Smith. However, Smith has provided no evidence to show that any of the Episode's Value is derived from his identity. Indeed, the Complaint simply alleges that "[t]he appropriation was for Defendants' commercial advantage in that it was for Defendant's [sic] pecuniary gain and profit."[86]

In *Midler v. Ford Motor Co.*, the Ninth Circuit addressed a situation where a company ran advertisements using a singer who was told to imitate Bette Midler.[87] The court held that "[w]hat [defendants] sought was an attribute of Midler's identity. Its value was what the market would have paid for Midler to

---

a marketable product. It's something that is of a public interest. When something [of this nature] does happen, it becomes newsworthy on a national spectrum."). Thus, even if it were reasonable to consider the Video "private," defendants would still be entitled to summary judgment on this claim.

[86]     Complaint ¶ 34.

[87]     *See* 849 F.2d at 463.

have sung the commercial in person."[88]

Here, Smith does not allege, nor has he introduced evidence to show,
that the Episode's value was in any way enhanced by his likeness or identity. The
Episode featured Smith only because he happened to be the victim of the attack.
The market would not have paid Smith any consideration for his appearance in the
portions of the Video that appeared in the Episode because his identity added no
value to the those excerpts. Smith has thus failed to state a prima facie violation
of his right of publicity. As a result, defendants' motion for summary judgment on
this claim is granted.

As discussed above, to prevail on a claim for a violation of the
California statutory right to publicity under section 3344, a plaintiff "'must prove
all the elements of the common law cause of action'" as well as the additional
elements.[89] Because Smith cannot prove the elements of the common law cause of
action, defendants' motion for summary judgment is also granted as to this claim.

### 4.    Breach of Contract

Defendants argue that Smith's breach of contract claim must be
dismissed because Smith cannot demonstrate that he suffered any damages as a

---

[88]    *Id.*

[89]    *Laws*, 448 F.3d at 1139 (quoting *Downing*, 265 F.3d at 1001).

23

result of defendants' breach of the Settlement Agreement. Smith responds that he

has suffered mental anguish and economic damages arising from the broadcast of

the Episode.

Damages are an essential element of a breach of contract claim under

California law. As discussed below, Smith has failed to demonstrate any

economic damages and is not permitted to collect for non-economic damages.

Thus, defendants' motion for summary judgment on this claim is granted.[90]

### a. Non-Economic Damages

As discussed above, California law provides that damages related to

emotional disturbance can be recovered on a breach of contract action only where

the parties expressly agreed that mental well-being was at stake, or where they

could have reasonably foreseen that emotional disturbance might result.[91]

---

[90] Defendants argue that Smith's breach of contract claim is preempted by the 1976 Copyright Act. Because I dismiss the claim on other grounds, I do not address this argument.

[91]

> Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i.e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of

24

The Settlement Agreement does not expressly provide that it is intended to protect Smith's mental condition. It does, however, state that it "contains the entire understanding and agreement between the parties hereto with respect to the matters referred to herein."[92] Smith is thus precluded from arguing that the parties had an understanding not memorialized in the Settlement Agreement that Smith's mental condition was at stake.

Given that Smith had licensed the Video for broadcast on national television several times, and had appeared on national television to discuss the incident, no reasonable jury could find that the parties contemplated the possibility that the unlicensed broadcast of the Video would cause Smith mental anguish. It would frustrate the intention of California contract law to permit recovery for mental distress where that distress was not foreseeable and its prevention was not an express intention of the parties.

### b.    Economic Damages

While Smith appears to argue that he has suffered economic damage as a result of the breach of the Settlement Agreement, he has not offered any

the breach of it.

*Hadley v. Baxendale*, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854).

[92]    Settlement Agreement ¶ 8.

evidence as to what this damage might be. On the contrary, Smith has indicated that he suffered no economic damage.[93]

Notwithstanding Smith's lack of demonstrable economic damages, Smith suggests that he should receive a sum "much larger" than the $40,000 paid to him as part of the settlement of his most recent set of copyright infringement claims because that sum was insufficient to deter defendants from violating his copyright.[94] Smith misunderstands the purpose of damages in contract law. Under California law, the remedy for breach of contract compensates the non-breaching party only for the harm caused by the breach itself. Because deterrence is not a goal of contract law, the amount paid to settle Smith's last set of claims is irrelevant.[95]

---

[93] *See* 4/26/07 Pre-Motion Conference Transcript at 19 (arguing that damages should be measured by defendants' profits from breaching the Settlement Agreement, but conceding that Smith "do[es] not have actual damages."). *See also* Pl. Dep. at 126 (conceding that only economic damages resulting from airing of Video were litigation costs).

[94] Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment ("Pl. Mem.") at 8.

[95] Were damages to be calculated based on the fair market value of the Video at the time of the breach, it is unlikely that the $40,000 figure would be correct. That sum was paid as per the Settlement Agreement in return for Smith's release of various legal claims. *See* Settlement Agreement ¶ 2. It thus represents the value to the parties to the Settlement Agreement of ending costly litigation and potential liability for past wrongs. It does not represent the value of the footage. On the contrary, the closest valuations of the Video that have been achieved are

.26

Smith also argues that because defendants were paid $200,000 for the

Episode, he should be entitled to "present evidence at trial . . . of the actual

damages he sustained as measured by the defendants' profits."[96] This argument

makes no sense. Smith's alleged damages have no relationship whatsoever to

defendants' profits.

"Contract damages seek to approximate the agreed-upon

performance."[97] The non-breaching party is entitled to receive compensation

sufficient to place that party in the position in which it would have been had the

contract not been breached. This compensation is intended simply to make the

---

the three hundred dollars and five hundred dollars that Smith was paid in return
for licenses to broadcast the Video on national television immediately after the
incident. *See* 6/6/07 Condensed Transcript of the Testimony of Charles A. Bleiler
¶¶ 16-17, 36-39, Ex. I to Notice of Motion (Smith's attorney at the time of the
incident and who represented him in negotiations regarding the Video). If
anything, the Video's value would have decreased since that time because the
event is no longer recent.

[96]    Pl. Mem. at 9. Defendants suggest that the value of the footage
should be calculated by determining the total price paid for the Episode and
multiplying it by the fraction whose numerator equals the duration of the portions
of the Episode that were taken from the Video (thirty-seven seconds) and whose
denominator equals the total duration of the Episode (forty-five minutes). This
formula yields approximately two hundred and eighty dollars. Smith correctly
argues that this formula assumes with no justification that each moment of the
Episode is equally valuable.

[97]    *Applied Equip.*, 869 P.2d at 460.

27

non-breaching party whole. Awarding the non-breaching party damages calculated by reference to the breaching party's profits could place the non-breaching party in a better position that it would have been in had the breach not occurred. This would constitute an undeserved windfall.

Defendants agreed not to broadcast the Episode without first removing portions of the Video, but failed to do so. Therefore, the operative question in determining Smith's damages is: What sum would be required to restore Smith to the position in which he would have been had defendants not broadcast thirty-seven seconds of his Video? Smith has offered no evidence whatsoever that indicates he has suffered any such economic damages.[98]

## B.  Claims Against NBC

The Episode was broadcast on the Sci Fi Channel, which Smith has alleged is "owned or controlled" by NBC.[99]  NBC's Senior Corporate Counsel has

---

[98]    Smith suggests that the market value of the Video has been reduced because it has been shown on television. *See* Pl. Dep. at 95-97. However, Smith has not indicated any intention to market the Video. On the contrary, Smith has repeatedly stated that he does not want the Video to be seen. *See, e.g., id.* at 104 ("[M]y stance is I want my privacy and I had no intention, nor do I, of showing it."). It is thus speculative whether Smith would ever license the Video and whether its market value was reduced by MG Perin's breach of the Settlement Agreement. These potential damages are far too speculative to be recoverable in a breach of contract action.

[99]    Complaint ¶ 17.

.28

explained that "[t]he Sci-Fi Channel is a division of . . . UTN, which is a general partnership composed of three partners: USA Networks Partner, LLC, USANi Holding Company LLC and Vivendi Universal Entertainment LLLP."[100]  Smith's brief does not address this issue and Smith does not contest that "NBC has no direct relationship with the Sci Fi Channel."[101]

Smith has introduced no evidence to show that NBC violated Smith's copyrights. On the contrary, UTN has conceded that it was responsible for this violation. Smith has not attempted to "pierce the corporate veil" to hold NBC liable for the activities of its partly owned subsidiary. Therefore, defendants' motion for summary judgment as to all claims against NBC is granted.

---

[100]    *See* 12/18/06 Declaration of Marciela S. Mozqueda ¶ 2, Ex. H to Notice of Motion.

[101]    Plaintiff's Counterstatement of Material Facts ¶ 3.

## VI. CONCLUSION

For the foregoing reasons, defendants' motion for partial summary

judgment is granted in its entirety. The Clerk of the Court is directed to close this

motion (docket # 26). A conference is scheduled for November 29, 2007, at 4:00

p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           October 29, 2007

30

## -Appearances-

**Counsel for Plaintiff:**

Elliot J. Stein, Esq.
Stevens & Lee, P.C.
200 College Road East, Suite 4400
Princeton, New Jersey 08540
(609) 243-9111

**Counsel for Defendants:**

Harry W. Lipman, Esq.
Rottenberg Lipman Rich, P.C.
369 Lexington Avenue, 15th Floor
New York, New York 10017
(212) 661-3080