UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
JONATHAN E. SMITH,

                      Plaintiff,

     - against -

NBC UNIVERSAL, a corporation, d/b/a
NBC UNIVERSAL TELEVISION GROUP
a/k/a NBC UNIVERSAL TELEVISION
and d/b/a SCI FI CHANNEL, MG PERIN
INC., a corporation, UNIVERSAL
NETWORKS, and DOES I-XX, inclusive,

                      Defendants.
------------------------------------------------------------- X

**OPINION AND ORDER**

06 Civ. 5350 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

This action relates to the unauthorized broadcast of video footage of an orca attacking plaintiff Jonathan Smith (the "Video").[1] Defendants have stipulated that they violated Smith's copyright by airing the Video without his consent, though damages remain in dispute. The Court has scheduled a trial for March 3, 2008. In anticipation of that trial, both plaintiff and defendants have

---

[1] A more complete account of the facts of this case can be found in the Court's earlier opinion. *See Smith v. NBC Universal et al.*, 524 F. Supp. 2d 315 (S.D.N.Y. 2007).

1

made motions in limine that I address in this Opinion.

## II. APPLICABLE LAW

Section 504 of the Copyright Act of 1976 (the "Act") provides that an infringer is liable for either actual or statutory damages, at the election of the plaintiff.[2] Smith has stipulated that he is seeking statutory damages.[3] "[T]he Seventh Amendment provides a right to a jury trial where the copyright owner elects to recover statutory damages."[4] This right includes the right "to have a jury determine the *amount* of statutory damages . . . ."[5]

Statutory damages must be "not less than $750 or more than $30,000 as the court considers just."[6] If the plaintiff proves that the infringement was willful, the maximum statutory damages may be increased to $150,000. If the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright," the minimum may be decreased to

---

[2] *See* 17 U.S.C. § 504(a).

[3] *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion in Limine ("Pl. Opp.") at 4-5. *See also Twin Peaks Prods. v. Publications Intern.*, 996 F.2d 1366, 1380 (2d Cir. 1993) ("Once a plaintiff has elected statutory damages, it has given up the right to seek actual damages . . . .").

[4] *Feltner v. Columbia Pictures Television*, 523 U.S. 340, 353 (1998).

[5] *Id.* (emphasis in original).

[6] 17 U.S.C. § 504(c)(1).

2

$200.[7] Additionally, any prevailing party may be awarded costs, including reasonable attorney's fees, at the discretion of the court.[8]

There is "broad discretion in setting the amount of statutory damages within the minimum and maximum amounts prescribed by the Copyright Act."[9] "In awarding statutory damages, the courts may consider, among other factors, the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, the deterrent effect on the defendant and third parties, the defendant's cooperation in providing evidence concerning the value of the infringing material, and the conduct and attitude of the parties."[10]

---

[7] *Id.* § 504(c)(2).

[8] *See id.* § 505.

[9] *National Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001). *Accord Feltner*, 523 U.S. at 345-46 ("'[T]he court in its discretion' may, within limits, increase or decrease the amount of statutory damages." (quoting 17 U.S.C. § 504(c)(2))); *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 232-33 (1952); *D.C. Comics v. Mini Gift Shop*, 912 F.2d 29, 34 (2d Cir. 1990) ("'Within these [statutory maxima and minima] limitations the court's discretion and sense of justice are controlling . . . .'" (quoting *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106-07 (1919)); *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986) (referring to "the wide discretion the Copyright Act affords the trial court in setting the amount of statutory damages") (citations omitted).

[10] *National Football League*, 131 F. Supp. 2d at 473-74 (citations omitted). *Accord Getaped.com v. Cangemi*, 188 F. Supp. 2d 398, 403 (S.D.N.Y. 2002) ("Factors considered relevant to determining an appropriate statutory damages award include the 'expenses saved and profits reaped by the infringers,'

## III. DISCUSSION

### A. Emotional Harm

#### 1. Admissibility of Emotional Harm Generally

Smith has no plans to market the Video and it is not immediately clear that defendants profited substantially from their violation of Smith's copyright. Instead, Smith claims that the broadcast of the Video caused him emotional harm, and seeks to redress such harm and to prevent its recurrence.

This is an unusual copyright case. Most cases involve copyrights that are either the property of large corporations or relate to marketable products. The law of copyright has developed around concepts such as lost profits, disgorgement, and unjust enrichment.[11] Typically, a plaintiff sues to protect his financial interest in his copyright materials.

---

the revenues lost by the plaintiff, the infringers' state of mind (wilful, knowing or merely innocent), the value of the copyright and the deterrent effect on both the defendant and others. 'Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy of discouraging wrongful conduct.'") (citations omitted).

[11] *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 485-86 (2d Cir. 2004) ("Though the statute allows a copyright holder to recover damages suffered at the hands of an infringer, the reward to be gained (or the loss suffered) is a 'secondary consideration' in the copyright scheme; its 'primary object . . . lie[s] in the general benefits derived by the public from the labors of authors.'") (citation omitted) (quoting *United States v. Paramount Pictures*, 334 U.S. 131, 158 (1948)).

Contrary to the arguments raised by defendants, however, emotional damages may be recoverable in some copyright actions. Section 504 of the Copyright Act employs the term "actual damages," and "[c]ourts and commentators agree it should be broadly construed to favor victims of infringement."[12] While emotional damages seem more appropriate to certain torts, "common-law copyright was often enlisted in the service of personal privacy,"[13] and there is no indication that Congress meant to abrogate this doctrine.[14] A similar analysis should apply to statutory damages. Under certain circumstances, an individual may sustain foreseeable emotional harm due to the infringement of a copyright on private materials. In that event, compensation for emotional harm would be both just and in harmony with the plain language and the intent of the

---

[12] *On Davis v. The Gap*, 246 F.3d 152, 164 (2d Cir. 2001) (citing William F. Patry, *Copyright Law and Practice* 1167 (1994)).

[13] *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 554 (1985) (citing Louis D. Brandeis & Samuel D. Warren, *The Right to Privacy*, 4 Harv. L. Rev. 193, 198-99 (1890)).

[14] *See id.* at 551 (observing that "[u]nder common-law copyright, 'the property of the author . . . in his intellectual creation [was] absolute until he voluntarily part[ed] with the same'" and finding that similar concerns inform the interpretation of the modern Copyright Act) (quoting *American Tobacco Co. v. Werckmeister*, 207 U.S. 284, 299 (1907) (alterations in *Harper & Row*)).

statute.[15] As a result, the foreseeable emotional harm suffered by a plaintiff whose privacy was violated by unauthorized publication of his copyrighted work could be considered in determining statutory damages.

That said, no party has located any decision where emotional damages have been awarded on a copyright claim, or were considered as a factor in determining statutory damages.[16] On the contrary, the only relevant case either party has provided the Court holds that emotional damages are not recoverable under the Copyright Act.[17] Nonetheless, I conclude that damages for emotional harm may be recovered in a copyright action, though only where such harm is foreseeable. For example, a plaintiff whose personal, copyrighted documents (such as a private diary) were distributed without her consent would have a strong

---

[15] I reach this conclusion notwithstanding the maxim that courts should look to patent law "for guidance when [copyright law] precedent is lacking." *Davis v. Blige*, 505 F.3d 90, 104 (2d Cir. 2007) (citing *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 439 (1984)). Because of the personal nature of creative work, and the important distinctions between creative work and inventions, I conclude that patent law cannot inform this decision.

[16] Courts may resist awarding emotional damages in copyright actions because such damages are inherently speculative. In a copyright action, uncertainty precludes recovery if the uncertainty relates to whether damages were suffered at all. However, if the uncertainty relates to the amount of damages, not their existence, then recovery is still possible. *See On Davis*, 246 F.3d at 164, 167.

[17] *See Mackie v. Reiser*, 296 F.3d 909, 917 (9th Cir. 2002) (holding that non-economic damages are not compensable in a copyright action).

argument for recovery of emotional damages.[18]

## 2. Discussion

Evidence of emotional damages is inappropriate here. As discussed in this Court's prior Opinion, emotional damage to Smith following the airing of a thirty-seven second clip of a video that he had previously licensed for national broadcast was not foreseeable.[19] The Video is not a result of Smith's creative effort,[20] and he has not used his copyright to keep the Video confidential, but instead has profited from its publication. To permit Smith to seek emotional damages in this circumstance would unreasonably broaden the scope of copyright law beyond what was intended by Congress. Given that the Video has previously

---

[18] *See, e.g., Szekely v. Eagle Lion Films*, 140 F. Supp. 843, 849 (S.D.N.Y. 1956) ("[P]laintiff . . . is entitled to damages 'based upon its special value to him.' This is peculiarly true in the case of a manuscript.") (citing Restatement of the Law of Torts § 911 cmt. e), *aff'd*, 242 F.2d 266 (2d Cir. 1957).

[19] *See Smith*, 524 F. Supp. 2d at 330 ("Given that Smith had licensed the Video for broadcast on national television several times, and had appeared on national television to discuss the incident, no reasonable jury could find that the parties contemplated the possibility that the unlicensed broadcast of the Video would cause Smith mental anguish.").

[20] *Cf. New Era Publ'ns Intern. v. Henry Holt & Co.*, 695 F. Supp. 1493, 1505 (S.D.N.Y. 1988) (arguing that fair use should be disfavored "[i]f the protected document is highly personal, private and intimate, if the author has a strong personal interest in deferring publication, [and] if the public interest in the contents is minimal and voyeuristic at best").

been broadcast with Smith's consent, he cannot show that the infringement led to emotional damages. Smith is thus precluded from introducing evidence of emotional harm that he claims he suffered as a result of the broadcast.[21]

In addition, evidence of emotional harm suffered by Smith poses a severe risk of confusing the jurors because they may mistakenly seize upon and base their award on the harm he suffered from the orca attack itself, rather than on defendants' acts – *i.e.*, the broadcast. The risk that the jury will confuse the issues substantially outweighs the probative value of the evidence.[22]

Smith can prove his damages in several other ways. He can show the profit made by defendants through use of the Video. He can demonstrate the fair market price that defendants would have had to pay had they attempted to license the Video.[23] But he cannot argue that statutory damages should be based on the emotional harm he suffered as a result of the broadcast.

---

[21] Smith also asserts that evidence of his emotional damages is relevant to his claims for an injunction against future violations and impoundment of the unauthorized copies. *See* Pl. Opp. at 6. These are equitable remedies and there are no triable issues of fact relating to such remedies.

[22] *See* Fed. R. Evid. 403.

[23] *See On Davis*, 246 F.3d at 166 ("The question is not what the owner would have charged, but rather what is the fair market value.").

## B. Licenses

Soon after the orca attack, Smith granted certain licenses (the "Licenses") to broadcasters permitting them to air the Video. Since that time, Smith has not licensed the Video for broadcast. Defendants now seek to use the Licenses to demonstrate the value of the Video.

Smith maintains that the Licenses "were granted in aid of Mr. Smith's [personal injury] litigation against Sea World and not in consideration of the nominal fees paid by the licensees."[24] Charles Bleiler, Smith's attorney in that personal injury action, explains that "there were numerous inquiries to my office from the press in regards to the incident. As part of our litigation strategy, we agreed to cooperate with the press which included providing interviews and licensing the use of video of the killer whale attack for limited periods of time."[25] He further explains that "[t]he purpose of providing the tape to the press was in the hope that other witnesses and/or victims with similar injuries might come forward

---

[24] Plaintiff's Memorandum of Law in Support of Motions in Limine, at 2.

[25] Declaration of Charles A. Bleiler in Support of Plaintiff's Motion to Exclude Evidence Expected to Be Offered at Trial and Memorandum of Points and Authorities Thereof ¶ 2.

to aid in Mr. Smith's case."[26]

However, in a deposition taken in the instant suit, Bleiler testified that in licensing the Video, "our intent was just to help get some money to help defray some of the litigation cost, and it was a very quick thing."[27] Given these conflicting statements regarding Smith's intent, a reasonable jury could conclude that the Licenses reflect the fair market value of the Video at the time they were granted, and are therefore probative of the Video's present value.

Smith suggests that defendants have other evidence of damages, including the agreement to broadcast the television program that featured an excerpt from the Video. While Smith is correct that the availability of alternative evidence is a factor in the Rule 403 balancing test,[28] the broadcast agreement does not constitute alternative evidence because it suggests a fair market value significantly higher than that suggested by the Licenses.

Because the determination of damages may be difficult, and the

---

[26] *Id.* ¶ 3.

[27] Deposition of Charles A. Bleiler at 17, Ex. I to 7/13/07 Notice of Motion for Summary Judgment.

[28] *See Old Chief v. United States*, 519 U.S. 172, 184 (1997) ("[W]hat counts as the Rule 403 'probative value' of an item of evidence . . . may be calculated by comparing evidentiary alternatives.").

Licenses are relevant evidence that might aid the jury in its decision, they are admissible. Smith is free to argue to the jury that the amounts paid for the Licenses do not reflect the Video's value.

### C. Previous Actions

The Video was broadcast without Smith's authorization three previous times, in 1996, 1997, and 1999. Each time Smith sued for injunctive relief and damages.[29] MG Perin, Inc., one of the defendants in this action, was also a defendant in the 1996 action. None of the other defendants in the instant action were defendants in any of the previous actions. The 1996 action was settled for $40,000, the 1997 action was settled for $100,000, and the 1999 action was settled for $20,000. The parties now dispute what evidence concerning these previous actions should be admitted.

That the Video has been aired without a license three previous times, that Smith filed suit against those broadcasters, and that those actions were settled are facts relevant to the instant litigation and are not unduly prejudicial. The parties are therefore permitted to inform the jury of those facts, none of which appear to be disputed. The relevant information can be introduced into evidence

---

[29] *See Smith v. Fox Television Stations*, No. 96 Civ. 625 (S.D. Cal. 1996); *Smith v. Fox Television Stations*, No. 97 Civ. 1877 (S.D. Cal. 1997); *Smith v. RTV News*, No. 99 Civ. 603 (S.D. Cal. 1999).

11

via stipulation or testimony.

### 1. Complaints

Defendants seek to offer the complaints filed in the prior suits to prove that because Smith has sued for monetary damages in the past, he is not trying to protect his privacy.[30] This argument makes no sense. Smith's pursuit of monetary damages indicates that he is vigilantly guarding his privacy. Permitting the complaints to be admitted into evidence, however, poses a significant danger that the jury will evaluate the merits of his past claims, and this danger substantially outweighs the minimal probative value of the complaints. The parties may inform the jury of the nature of the suits, but may not introduce the pleadings filed in those suits.

Defendants also argue that the complaints should be admitted to demonstrate that the Video has been broadcast several times already, and its value has therefore decreased. However, the complaints are not the best evidence of these broadcasts, and their probative value in demonstrating that the broadcasts occurred is substantially outweighed by their potential to confuse the jury.

---

[30] Smith opposes this evidence because he believes "Defendants are seeking to paint Plaintiff as a serial litigant . . . ." Pl. Opp. at 9. He further states that "[t]he transparent objective of Defendants' proffered evidence is to discredit the credibility of Plaintiff by offering evidence to impugn his character." Reply in Support of Plaintiff's Motions in Limine, at 4.

### 2. Previous Settlement Agreements

The defendants in the earlier actions settled their cases with Smith in return for certain payments. Defendants seek to prevent Smith from informing the jury of the values of the settlement payments,[31] invoking Rule 408 of the Federal Rules of Evidence, which prohibits the admission of settlements to demonstrate the value or amount of the underlying claim.[32] Although several justifications for the rule have been offered,[33] the Second Circuit has made clear that "'Rule 408 is based upon the policy of aiding the compromise and settlement of disputes.'"[34]

#### a. Settlement Agreements Generally

Defendants argue that the settlements are *per se* inadmissible because of Rule 408. However, the Rule states that the amount of a claim cannot be shown

---

[31] *See* Defendants' Memorandum of Law in Support of Their Motion in Limine, at 6. Defendants' original motion in limine addressed only the settlement of the 1996 action. Defendants subsequently informed the Court that they sought exclusion of a second settlement between Smith and non-parties. *See* 2/15/08 Letter from Harry W. Lipman, Attorney for Defendants, to the Court.

[32] Defendants wrongly suggest that the evidence should be excluded "as evidence of a party's liability." *Id.* at 6. Defendants' liability is not at issue.

[33] *See* Fed. R. Evid. 408 Advisory Committee Note (discussing various rationales).

[34] *American Soc. of Composers, Authors & Publishers v. Showtime/The Movie Channel, Inc.*, 912 F.2d 563, 580 (2d Cir. 1990) (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* 408-19 (1986)).

by an offer "to compromise the claim . . . ."[35] In this sentence, "the claim" refers only to the claim whose amount is in dispute. Facially, the Rule does not bar the introduction of a settlement in any action except the one that was resolved by that settlement.[36]

Indeed, the Second Circuit has explained that "settlement offers or agreements are not automatically inadmissible . . . if they are offered against a party who was not a participant in the settlement discussions or agreement. . . . Rather the Court must assess the degree of relevance and potential prejudice of the

---

[35] Fed. R. Evid. 408.

[36] If it did so, there would be no need for sealed settlements. *See generally* Robert Timothy Reagan, *The Hunt for Sealed Settlement Agreements*, 81 Chi.-Kent L. Rev. 439 (2006); Anne-Therese Bechamps, Note, *Sealed Out-of-Court Settlements: When Does the Public Have a Right to Know?*, 66 Notre Dame L. Rev. 117 (1990). *Cf. Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1306-07 (11th Cir. 1985) (observing that Rule 408 "has been held applicable to situations involving settlements between one of the parties and a third party, where such settlements have arisen out of the same transaction that is in dispute," but not reaching whether it should be extended to cover situations where the settlement addressed a similar but distinct transaction) (citation omitted); *Armstrong v. HRB Royalty, Inc.*, 392 F. Supp. 2d 1302, 1308 (S.D. Ala. 2005) ("Since Rule 408's enactment in 1974, excluding evidence of settlements and offers has depended on a showing that the 'same claim' was the subject of both the prior discussions and the lawsuit in which the evidence is offered."). *But see N.A.A.C.P. v. A.A. Arms, Inc.*, Nos. 99 Civ. 3999, 99 Civ. 7037, 2003 WL 2003730, at *1 (E.D.N.Y. Apr. 2, 2003) ("[R]eference to settlement discussions generally is precluded. This includes reference to proposed settlement agreements involving [this defendant] in other cases.") (citation omitted).

14

evidence in light of the particular circumstances of the case."[37]

Here, evidence of the settlements and their amounts are relevant to a determination of the amount of statutory damages and are therefore admissible. The settlements bear directly on the value of Smith's claim. Admitting settlement agreements in situations such as this one will have minimal deterrent effect on future settlements because at the time of settlement, parties generally do not contemplate becoming embroiled in future litigation on the same issue.[38]

### b. Settlement of the 1996 Action

Deterrence is a factor that juries may take into account when determining statutory damages.[39] Smith argues that the 1996 settlement agreement is relevant to the jury's determination of statutory damages because it bears on the factor of deterrence. Smith reasons that MG Perin has violated his copyright before, and a reasonable jury could determine that the amount of the previous

---

[37] *American Soc. of Composers*, 912 F.2d at 580 (citations omitted).

[38] This factor differentiates these settlements from those that the settling parties might *at the time* fear that future adversaries could obtain. *Cf. Hudspeth v. Commissioner of Internal Revenue*, 914 F.2d 1207, 1213 (9th Cir. 1990) ("Settlements by the Commissioner would be inhibited if the Commissioner would have to review whether a settlement could be binding in subsequent cases.").

[39] *See Fitzgerald Publ'g Co.*, 807 F.2d at 1117 ("[T]he potential for discouraging the defendant is factored into the determination of the award.") (citations omitted).

15

settlement was insufficient to deter future violations.

Settlement offers are not necessarily admissible even if offered for purposes other than those forbidden by Rule 408. In determining whether settlements should be admitted for other purposes, courts are instructed to "'weigh the need for such evidence against the potentiality of discouraging future settlement negotiations.'"[40]

If the jury were to find that MG Perin wilfully violated Smith's copyright – and therefore that the previous settlement agreement was insufficient to deter the violation – the amount of that settlement would be relevant to its determination of statutory damages. As discussed above, admission of this evidence would have minimal effect on future settlements. Therefore, the amount of the 1996 settlement is admissible.

## IV. CONCLUSION

For the reasons discussed above, Smith cannot seek damages for his emotional distress. Information regarding previous broadcasts of the Video and Smith's prior suits relating to those broadcasts is admissible, as well as the amounts of the settlements of the prior actions. The complaints in those actions

---

[40] *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999) (quoting *Trebor Sportswear Co. v. The Limited Stores*, 865 F.2d 506, 510-11 (2d Cir. 1989)).

16

are inadmissible. Defendants may introduce past licenses of the Video granted by Smith. The Clerk of the Court is directed to close these motions (documents no. 48, 50, and 53 on the docket sheet).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
February 22, 2008

## -Appearances-

**For Plaintiff:**

Elliot J. Stein, Esq.
Stevens & Lee, P.C.
200 College Road East, Suite 4400
Princeton, New Jersey 08540
(609) 243-9111

**For Defendants:**

Harry W. Lipman, Esq.
Rottenberg Lipman Rich, P.C.
369 Lexington Avenue, 15th Floor
New York, New York 10017
(212) 661-3080